No. 26-2002

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellant

v.

STEVEN KOSKI, in his Official Capacity as Commissioner of the Virginia Department of Elections,

Defendant-Appellee

COMMON CAUSE; KATHERINE ELLEN; VIRGINIA STATE CONFERENCE OF THE NAACP; NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE,

Intervenors-Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT RICHMOND

REPLY BRIEF FOR THE UNITED STATES AS APPELLANT

*(See inside cover for continuation of counsel)*

*(continuation of counsel)*

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

ANDREW G. BRANIFF
KELSEY E. MCGEE
BENJAMIN E. SACHRISON
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 251-0053

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ........ 1

ARGUMENT

I. The DOJ's demand for Virginia's SVRL satisfied Title III's requirements. ........ 2

A. Virginia's SVRL is a record that "comes into" Commissioner Koski's possession. ........ 2

B. Courts play a limited role in assessing the Attorney General's demand under Title III ........ 12

C. The DOJ's demand stated an adequate basis ........ 17

D. The DOJ's stated purpose of ascertaining Virginia's compliance with the NVRA and HAVA was sufficient. ........ 23

E. Mere allegations of purported improper purposes do not eliminate the United States' entitlement to records under Section 303 ........ 25

II. Neither state nor federal privacy laws give this Court any grounds to affirm the district court's judgment ........ 28

A. Federal law preempts any contrary Virginia privacy law. ........ 28

B. The United States is complying with federal privacy laws ........ 29

**TABLE OF CONTENTS (continued): PAGE**

III. If this Court reverses, it should instruct the district court to order immediate production of the SVRL. .......... 31

CONCLUSION .......... 32

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**CASES:** **PAGE**

*American Oversight v. United States Dep't of Just.*, 45 F.4th 579 (2d Cir. 2022) .......... 30

*Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647 (2021) .......... 30

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) (per curiam) .......... 24

*Common Cause v. United States Dep't of Just.*, No. 1:26-cv-1352 (SLS), 2026 WL 3033772 (D.D.C. Oct. 9, 2026) .......... 1

*Dean v. United States*, 556 U.S. 568 (2009) .......... 24

*Department of Com. v. New York*, 588 U.S. 752 (2019) .......... 25-26

*EEOC v. American Nat'l Bank*, 652 F.2d 1176 (4th Cir. 1981) .......... 19

*EEOC v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110 (4th Cir. 1997) .......... 11

*Fischer v. United States*, 603 U.S. 480 (2024) .......... 9

*Hannah P. v. Coats*, 916 F.3d 327 (4th Cir. 2019) .......... 22

*High Desert Relief, Inc. v. United States*, 917 F.3d 1170 (10th Cir. 2019) .......... 27

*Honeycutt v. United States*, 581 U.S. 443 (2017) .......... 2-3

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963) .......... 12-13

**CASES (continued):** **PAGE**

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) .................................... 15

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) .......................... 13-16, 28

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024) ........................ 20

*McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) ...................... 27

*Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130 (4th Cir. 1993) ......... 13

*National Inst. of Mil. Just. v. United States Dep't of Def.*,
404 F. Supp. 2d 325 (D.D.C. 2005),
*aff'd*, 512 F.3d 677 (D.C. Cir. 2008) ............................................... 4

*Niz-Chavez v. Garland*, 593 U.S. 155 (2021) ......................................... 18

*SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ....................................... 16

*Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992) ................................. 20

*United States v. Benson*, 819 F. Supp. 3d 753 (W.D. Mich.),
*aff'd*, 179 F.4th 470, *reh'g en banc denied*,
187 F.4th 462 (6th Cir. 2026) ............................................... *passim*

*United States v. Davis*, 99 F.4th 647 (4th Cir. 2024) ........................ 20-21

*United States v. Evans*, No. 1:25-cv-4403, 2026 WL 2267774
(D.D.C. Aug. 6, 2026) ....................................................................... 7

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) .......................... 24

*United States v. Powell*, 379 U.S. 48 (1964) ...................................... 13-14

*United States v. White*, 139 F.3d 998 (4th Cir. 1998) ............................. 13

**CASES (continued):** **PAGE**

*United States Dep't of Just. v. Tax Analysts*,
492 U.S. 136 (1989) ....................3-5

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*,
386 F.3d 581 (4th Cir. 2004) ....................21-22

*Yee v. City of Escondido, Cal.*, 503 U.S. 519 (1992)....................21

**STATUTES:**

Civil Rights Act of 1960 (CRA)
52 U.S.C. 20701 .................... *passim*
52 U.S.C. 20703 ....................17-18
52 U.S.C. 20704 ....................16

Help America Vote Act of 2002 (HAVA)
52 U.S.C. 20901 *et seq.* ....................1
52 U.S.C. 21083(a)(1)(A)(i) ....................11
52 U.S.C. 21083(a)(1)(A)(viii) ....................11
52 U.S.C. 21083(a)(5)(A)(i)-(ii) ....................24-25

Internal Revenue Code
26 U.S.C. 7602(a)(1) ....................14
26 U.S.C. 7605(b) ....................14

National Voter Registration Act of 1993 (NVRA)
52 U.S.C. 20501 *et seq.* ....................1
52 U.S.C. 20501(a)(1) ....................25

Privacy Act of 1974
5 U.S.C. 552a(e)(4) ....................30

10 U.S.C. 130c(b)(1) ....................4

**LEGISLATIVE HISTORY:**

106 Cong. Rec. 7767 (1960) ....................24

**REGULATION:** **PAGE**

68 Fed. Reg. 47,611 (Aug. 11, 2003) .......... 30-31

**MISCELLANEOUS:**

Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation* (Mar. 19, 2026), https://perma.cc/3ZQ3-NX6U .......... 17

*Oxford English Dictionary* (1933) .......... 3

*Webster's New World Dictionary of the American Language* (8th coll. ed. 1960) .......... 20

## INTRODUCTION

The individual weight of every vote in the United States is critical to confidence in federal elections. The American people deserve elections they can trust. Accurate voter rolls are essential to that trust in the process and confidence in the outcome. The Department of Justice (DOJ) seeks to obtain Virginia's statewide voter registration list (SVRL) to ensure that our federal elections deserve that trust.[1] In doing so, the DOJ is lawfully exercising its authority under Title III of the Civil Rights Act of 1960 (CRA) to ensure Virginia is complying with the list-maintenance requirements of the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. 20501 *et seq.*, and the Help America Vote Act of 2002 (HAVA), 52 U.S.C. 20901 *et seq.* None of the arguments advanced by Commissioner Steven Koski, the National Association for the Advancement of Colored People and the NAACP Virginia State Conference (collectively, NAACP),

---

[1] A district court has "set[] aside and vacate[d] DOJ's" so-called "Voter List Maintenance Policy." *Common Cause v. United States Dep't of Just.*, No. 1:26-cv-1352 (SLS), 2026 WL 3033772, at *36 (D.D.C. Oct. 9, 2026). The DOJ has "has appealed [this] decision" and sought "a stay of th[e] decision pending appeal." Doc. 57, at 2 (No. 1:26-cv-1352 (SLS)). The "DOJ does not interpret [that] decision as pretermitting or requiring dismissal of ongoing" appeals, including this one, related to "obtain[ing] voter rolls." *Id.* at 13.

and Common Cause and Katherine Ellena (collectively, Common Cause), (collectively, defendants) support the district court's contrary conclusion.

## ARGUMENT

### I. The DOJ's demand for Virginia's SVRL satisfied Title III's requirements.

#### A. Virginia's SVRL is a record that "comes into" Commissioner Koski's possession.

Title III provides that "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of any [federal election], all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. 20701. Defendants argue that "come into" excludes state-generated documents. Koski Br. 19-26; NAACP Br. 16-20; Common Cause Br. 19-24.[2] It does not. *See* U.S. Br. 15-27.

1. NAACP and Common Cause rely on *Honeycutt v. United States*, 581 U.S. 443 (2017), to assert that "'coming into' possession" equates to "acquiring, obtaining, or receiving something from an outside source."

[2] "U.S. Br." refers to the United States' opening brief. "Koski Br." refers to Commissioner Koski's response brief. "NAACP Br." refers to NAACP's response brief. "Common Cause Br." refers to Common Cause's response brief. "DNC Br." refers to DNC's amicus brief. "Lawyers' Comm. Br." refers to Lawyers' Committee's amicus brief.

NAACP Br. 17; *see* Common Cause Br. 20-21; *see also* Koski Br. 20. Their reliance is mistaken because *Honeycutt* does not define "come into possession" or impose some external-source requirement. *See Honeycutt*, 581 U.S. at 449-450. Further, their reading of *Honeycutt* ignores that the Supreme Court noted that one definition of "obtain" included "[t]o come into the possession . . . of (something) by one's own effort." *Id.* at 449 (brackets in original) (quoting 7 *Oxford English Dictionary* 37 (1933)). Even under this definition, an officer of election who uses his own effort to compile voter data "comes into possession" of the SVRL.

Defendants further err in suggesting that *United States Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989), supports their understanding of "come into possession." Koski Br. 30; Common Cause 26-27. It is irrelevant that *Tax Analysts* interpreted the Freedom of Information Act in lieu of the CRA. Instead, *Tax Analysts* is "instructive" because the Supreme Court "used the phrase 'come into the agency's possession' while discussing a category of records that expressly included agency-created documents, suggesting that the phrase naturally describes the assumption of official custody regardless of whether the records were created within or received from outside the agency." *United*

*States v. Benson*, 187 F.4th 462, 471 (6th Cir. 2026) (*Benson III*) (Griffin, J., dissenting). Contrary to Common Cause's suggestion, the Supreme Court's use of "come into . . . possession" draws no distinction between internal or external documents. *Compare* Common Cause Br. 27 *with Tax Analysts*, 492 U.S. at 145.

Numerous statutes use similar phrases to regulate acquiring information or property *through improper means* or to trigger duties to act based on acquiring information or property *at a particular time*. *See* U.S. Br. 21-24. Defendants assert that the United States' reliance upon these statutes is misplaced. Koski Br. 31-33; NAACP Br. 25-26; Common Cause 29. First, Commissioner Koski and NAACP miss why 10 U.S.C. 130c is instructive. Koski Br. 31-32; NAACP Br. 25-26. It is instructive because it would be absurd to interpret 10 U.S.C. 130c(b)(1) as permitting the government to "only withhold information relayed from the foreign government, but not a document produced by the United States . . . even though the United States's generated documents make clear the substance of the information provided by the foreign government." *National Inst. of Mil. Just. v. United States Dep't of Def.*, 404 F. Supp. 2d 325, 339 (D.D.C. 2005), *aff'd*, 512 F.3d 677 (D.C. Cir. 2008). The same

logic applies for the SVRL, which consists of information from individual voter records. Second, even granting their reading of these statutes, these statutes do not support their reading of Section 301's use of "come into possession." As Judge Griffin recognized, Section 301 "contains no comparable limitation" on the source of the records. *Benson III*, 187 F.4th at 472 (Griffin, J., dissenting). Therefore, "in those statutes, any external-source limitation flows from the nature of what is being regulated-not from the phrase 'come into possession.'" *Ibid.*

Election officers in Virginia acquired records and information from individual voters while carrying out their duties. When they aggregated those individual records into one new, single record—the SVRL—they acquired that new record and retained it within their control, thus coming into possession of the SVRL. *See United States v. Benson*, 179 F.4th 470, 484 (6th Cir. 2026) (*Benson II*) (Nalbandian, J., dissenting). The moment of the SVRL's creation is the relevant moment; after that moment, the creating officer possesses a new document that he previously did not possess. *See Tax Analysts*, 492 U.S. at 144-145.

2. Seeking shelter elsewhere, defendants look to history. Defendants argue their assertion that the SVRL is not a record pursuant

to Title III "comports with the backdrop against which Title III was enacted." Koski Br. 25. It does not.

Defendants assert that the SVRL is not a record for the purposes of Section 301 because Title III was enacted because state officials were destroying voter registration applications. Koski Br. 25-26; NAACP Br. 29-31; Common Cause Br. 21-23. For example, Common Cause asserts that the SVRL is not a record because "Title III at its heart is a retention provision to prevent the destruction of materials submitted by would-be voters so that federal enforcers can determine whether they were being denied registration on the basis of race." Common Cause Br. 22-23. Yet, defendants fail to explain how voter applications, on their own, could have demonstrated discrimination absent the notations or registration rolls created by election officials showing whether those applications were accepted or rejected. Try as we might, the answer is beyond us.

In the alternative, NAACP argues that the SVRL is not a record because "voter lists . . . were *already* available to DOJ in most States." NAACP Br. 30-31 (emphasis in original). This is an odd argument. Every party recognizes that Congress passed the CRA after States changed their state laws to permit or require the destruction of voter applications

to thwart the Commission on Civil Rights. Koski Br. 25-26; NAACP Br. 30; Common Cause Br. 21-22. Therefore, it would be remarkable to say the least if Congress drafted Title III to exclude State-created records because, at least at that moment, the States granted them access to such records. No one can argue Congress is that inept. *See Benson III*, 187 F.4th at 481 (Thapar, J., dissenting) ("[T]he panel majority's reading of Title III leaves the Attorney General with a futile system that Congress never designed.").

3. Defendants make a variety of additional arguments. None of which supports the district court's conclusion.

NAACP and Common Cause rely on a pair of analogies drawn from other recent SVRL cases: that a baker who buys ingredients and bakes a cake would not say she "came into possession" of the cake (NAACP Br. 18 (citing *Benson II*, 179 F.4th at 479)), or that one would not say the Mona Lisa "came into the possession" of Leonardo da Vinci when he painted it. Common Cause Br. 26 (quoting *United States v. Evans*, No. 1:25-cv-4403, 2026 WL 2267774, at *6 (D.D.C. Aug. 6, 2026)).

But the phrase "come into possession" covers both acquisition from another source and through one's own creation, *see* U.S. Br. 16-25, even

when a more specific verb may be more apt in conversation given a particular context. Moreover, Commissioner Koski is not a baker in this hypothetical. Rather, he oversees other bakers. So "the rule becomes that a baker comes into possession of a cake delivered from another bakery but not of a cake handed to [him] by another baker working in the same bakery." *Benson III*, 187 F.4th at 473 (Griffin, J., dissenting). Defendants, in other words, draw "an organizational boundary" requirement. *Ibid.* "Yet nothing in § 20701 draws that distinction." *Ibid.*

For a similar reason, NAACP's argument that Commissioner Koski did not come into possession of the SVRL because "many persons can simultaneously access and change" the SVRL fails. NAACP Br. 29. Accepting NAACP's factual assertion, we fail to see how this supports NAACP's argument. Commissioner Koski cannot access or change the SVRL unless he has possession of it.

Not to be deterred, defendants assert that the SVRL is not a record because construing it as such would "create an unavoidable clash with the NVRA and HAVA, placing election officials in the bind of choosing which statute to honor—at the risk of criminal penalty." NAACP Br. 21; *see* Koski Br. 24-25; Common Cause Br. 23-24. That is incorrect.

The word "alter" in Section 302 does not encompass list maintenance under the NVRA or HAVA because list maintenance keeps the SVRL current. *See* U.S. Br. 27-30. As confirmation of such an interpretation, the surrounding verbs elucidate the meaning of "alter" in this provision, which eliminates any conflict. *See Fischer v. United States*, 603 U.S. 480, 487 (2024). Those verbs all describe actions typically taken to make a document unavailable, inaccessible, or inaccurate for evidentiary purposes. *See id.* at 489-490 (describing a similar list of verbs). The SVRL is, as required by the NVRA and HAVA, an inherently evolving and changing record. List maintenance keeps the SVRL current; it does not "alter" it as that term is used in Section 302. *See Benson III*, 187 F.4th at 473-474 (Griffin, J., dissenting).

Updating the list is supplementing it, not "willfully" "alter[ing]" it in the sense proscribed by Section 302. *Cf.* NAACP Br. 28. If, for example, we consider how records were retained and preserved before digital storage technology was available, we can easily recognize that inserting a new hardcopy voter-registration card or document in a binder-file that contains all the hardcopy voter-registration cards or documents of a particular jurisdiction is updating the file. Far from altering voter

records, updating the binder-file in this way is the very means of preserving the voter records, and the entire binder-file is itself a "record[] . . . *relating to* any . . . registration," 52 U.S.C. 20701 (emphasis added), just as a state's SVRL is such a record.

NAACP appears to recognize this as it argues that "depending on the issue being investigated, updating an SVRL might well impair its evidentiary value—such as if an ineligible voter previously listed were removed." NAACP Br. 27. NAACP's argument is off base. Contrary to its assertion, evidence that Virginia has removed an ineligible voter is the exact evidence that would aid the DOJ's investigation to verify Virginia's compliance with the NVRA and HAVA.

Finally, Commissioner Koski and Common Cause each raise a time related argument. Both are wrong.

Commissioner Koski asserts that the DOJ's demand for the "current" SVRL is not a record because it "must be related to a federal election that took place in the preceding 22 months." Koski Br. 16; *see also id.* at 27-29. Commissioner Koski is mistaken because the SVRL "relat[es] to" every voter's registration and is "requisite to voting" at the moment any registration is either added or removed from the list. 52

U.S.C. 20701. Further, the SVRL is "the official voter registration list for the conduct of *all elections* for Federal office in the State." 52 U.S.C. 21083(a)(1)(A)(viii) (emphasis added). Therefore, the SVRL as of July or August 2025 necessarily pertains to the 2024 election as it would include information on voters registered to vote in that election. *See EEOC v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 113 (4th Cir. 1997) ("Courts defer to an agency's own appraisal of what is relevant so long as it is not 'obviously wrong.'" (citation omitted)). And, even if Commissioner Koski is correct, he could have provided the DOJ with the SVRL that pertained to the 2024 election. 52 U.S.C. 21083(a)(1)(A)(i). He chose not to.

Common Cause attempts to rebut the United States' argument that "come into possession" cabins an election official's liability, *see* U.S. Br. 23-24, by asking, "[w]hy would Congress have wanted to cabin[] an election official's liability to documents she received during her tenure in the first place?" Common Cause Br. 29 (internal citation and quotation marks omitted). It asserts this would mean that "a Jim Crow county could have evaded Title III's requirements by firing its registrar and having a new registrar destroy all the materials submitted to their

predecessor." Common Cause Br. 29-30. Similarly, it asserts the United States' reading of Title III creates "random holes in coverage depending on how a given elections office happens to organize its operations and divide responsibility for creating and maintaining records." Common Cause Br. 32. Its arguments make no sense. An election official could not destroy a record if she did not have access, *i.e.*, possession, to the document. Recognizing this, "§ 20701 regulates individual election officers, not election offices as institutions." *Benson III*, 187 F.4th at 473 (Griffin, J., dissenting).

### B. Courts play a limited role in assessing the Attorney General's demand under Title III.

Defendants claim that Title III does not create an exemption from the Federal Rules of Civil Procedure. Koski Br. 41-44; NAACP Br. 32-35; Common Cause Br. 33-39. This is incorrect.

1. To begin, defendants fault the United States for filing a complaint, but they do not explain what other pleading they would have preferred. Koski Br. 43; NAACP Br. 35; Common Cause Br. 35. The United States' complaint referred to the district court's proceedings as "summary." JA38 (quoting *In re Gordon*, 218 F. Supp. 826, 826-27 (S.D.

Miss. 1963)).[3] The United States also moved to show cause why Commissioner Koski had not produced the SVRL. JA47-48. To require more of the United States, would be to "elevate form over substance," despite a total lack of prejudice to defendants, who have long been aware of the United States' position. *United States v. White*, 139 F.3d 998, 1002 (4th Cir. 1998).

Likewise, the DOJ did not "explicitly invoke[]" Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)) by seeking de novo review, NAACP Br. 33; defendants invoked that Rule (JA59; JA62; JA65) and the district court erroneously dismissed this case under that Rule. JA2, 12-13. An erroneous Rule 12(b)(6) dismissal is reviewed de novo under this Court's precedent. *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

2. The principal source of defendants' error is that they discredit *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) (*Lynd II*), because they wrongly assert that *United States v. Powell*, 379 U.S. 48 (1964), requires the ordinary application of the Federal Rules of Civil Procedure and the

[3] "JA_" refers to the joint appendix filed with the United States' opening brief.

factual scrutiny that accompanies a Rule 12(b)(6) motion. Koski Br. 42-44; NAACP Br. 33; Common Cause Br. 34-35; *see* DNC Br. 10-13. Yet, *Powell* involved an Internal Revenue Service (IRS) summons served on a taxpayer, and it authorized judicial inquiry only because Section 7605(b) of the Internal Revenue Code (IRC) prohibited the IRS from subjecting a taxpayer "to unnecessary examination or investigations," 379 U.S. at 52-53 (quoting 26 U.S.C. 7605(b)), and limited the IRS to documents "relevant or material" to its inquiry. 26 U.S.C. 7602(a)(1). The IRC's "relevant or material" and "necessary" limitations have no CRA analogue. *See* U.S. Br. 43-46; *Cf. Powell*, 379 U.S. at 53 (explaining what would render an investigation "unnecessary").

On the other hand, *Lynd II* is directly on point. *See* U.S. Br. 39-42. To be sure, *Lynd II* left courts "'open for determination' if there were a 'genuine dispute' about whether a 'particular paper or record' fell under the CRA." NAACP Br. 33-34 (quoting *Lynd II*, 306 F.2d at 226). But that says nothing about whether the district court may examine the factual sufficiency of the Attorney General's stated basis and purpose. It may not. *See* U.S. Br. 42; *Lynd II*, 306 F.2d at 226.

Unable to rely upon *Lynd II*'s holding, NAACP asserts that *Lynd II* is inapplicable because it asserts that, "unlike here, the Fifth Circuit in *Lynd* [*II*] had no reason to doubt the DOJ invoked the CRA for a valid purpose and complied with the statute's demand requirements." NAACP Br. 34. This is not an argument, but instead a way for NAACP to smuggle in its argument that the United States' stated purpose is pretextual. As discussed below, this argument is not worth its salt.

Common Cause attempts to distinguish *Lynd II* from this case because it "was a response to the situation that prevailed in the Jim Crow states in the early 1960s, where counties refused to process the registrations of Black voters and stymied every effort to enforce federal law." Common Cause Br. 36-37. Because of that backdrop, it asserts that "the Fifth Circuit emphasized that, after months of dilatory action, a new round of plenary 'judicial review or ascertainment' of facts was not warranted." Common Cause Br. 37 (citation omitted).[4] *Lynd II* does not

[4] In a somewhat similar vein, the DNC attempts to discredit *Lynd II* because it "was decided in the early 1960s, an era of racist disenfranchisement and massive resistance to civil rights, warranting aggressive judicial action against the 'frustration of national purposes.'" DNC Br. 11 n.4 (quoting *Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (citation omitted)). The DNC is correct about the historical context

so hold. Instead, the *Lynd II* court was explaining why delay in permitting inspection of the records was unwarranted given the nature of the records at issue. *Lynd II*, 306 F.2d at 230-231. Were Title III limited to "public records" containing no sensitive information, its own confidentiality provision, 52 U.S.C. 20704, would serve no purpose.

3. Importantly, neither party has convincingly argued that Title III provides a meaningful standard for judicial review. *See* U.S. Br. 40-42. NAACP asserts that the meaningful standard is whether the DOJ is acting within the CRA's scope. NAACP Br. 34-35. Yet, Section 303 fails to identify any standard against which to measure this statement of basis and purpose. *See* U.S. Br. 40-41. Recognizing this weakness, the DNC asserts "the 'meaningful standard' is truth." DNC Br. 14 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). One is left to wonder how the DNC envisions a court measuring this standard, especially since this appeal concerns a motion to dismiss. *United States v. Benson*, 819 F. Supp. 3d 753, 767 (W.D. Mich.) (*Benson I*), *aff'd*, 179 F.4th 470 (*Benson II*), *reh'g en banc denied*, 187 F.4th 462 (6th Cir. 2026) (*Benson III*).

---

surrounding *Lynd II*, but its argument misses the mark because it does not cite any case that cabins *Lynd II*'s holding to when it was enacted.

The Attorney General has been explicit that he seeks the SVRL to assess Virginia's compliance with the NVRA and HAVA. JA52 (July 15 letter); JA56 (August 14 letter). Yet, the DNC asks this Court to ignore the long-recognized presumption of regularity and second-guess the Attorney General because it cites an academic study. DNC Br. 14 (citing Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation* (Mar. 19, 2026)), https://perma.cc/3ZQ3-NX6U). The Court should not grant the DNC's request.

**C. The DOJ's demand stated an adequate basis.**

Defendants assert that the DOJ failed to assert an adequate basis for its demand because they contend that Section 303 requires a factual basis. Koski Br. 46-49; NAACP Br. 36-39; Common Cause Br. 41-50. It does not.

1. At the outset, defendants wrongly assert that this Court should consider only the August 2025 demand "to assess whether the U.S. Attorney General's written demand complied with 52 U.S.C. § 20703" because "[t]he July 2025 Request . . . contains no demand, nor does it even invoke Title III of the Civil Rights Act." Koski Br. 45; *see* NAACP Br. 37-38; Common Cause Br. 45-46. Yet, there is no statutory

requirement that every aspect of the DOJ's demand appear in one letter. Instead, courts should consider the context of multiple related demands to determine their collective purpose and effect.

Defendants argue otherwise, with NAACP relying on *Niz-Chavez v. Garland*, 593 U.S. 155 (2021). NAACP Br. 37-38. But in *Niz-Chavez*, the Supreme Court construed an alien-removal statute referring to "a notice to appear" to mean providing the alien with one document containing all the statutorily required elements—hardly similar to requiring state officers to respond to a demand by producing certain state records they are statutorily obligated to preserve. 593 U.S. at 158-160, 172. Indeed, the notice in *Niz-Chavez* was a "case-initiating document" analogous to an indictment or a complaint, not simply correspondence demanding records. *Id.* at 163-164. And the Supreme Court's decision largely hinged on the word "a." *Id.* at 161. Here, Section 303 refers to "demand in writing," not "a" demand in writing, and its use of "a" is in the context of the "statement of the basis and the purpose" that forms *part* of this demand. 52 U.S.C. 20703. As Judge Griffin recognized, Section 303's statement that "'[t]his demand shall contain a statement of the basis and the purpose therefor,'" "does not transform an otherwise open-ended

course of written correspondence into a single-document requirement." *Benson III*, 187 F.4th at 474 (Griffin, J., dissenting).

When multiple notice letters addressing the same underlying charges or allegations are sent as part of a coordinated effort to provide notice and seek compliance, they should be construed together as a single demand. *See EEOC v. American Nat'l Bank*, 652 F.2d 1176, 1186 (4th Cir. 1981) (explaining that multiple letters and conciliation failure notices provided defendant with sufficient awareness as to the charges against the company and all of its branches). The fact that the letters may have been sent at different times does not preclude their being read together, particularly when the recipient was aware of all communications and they were intended to accomplish the same purpose—compliance under federal law.

2. Defendants also confuse the issue by asserting that Title III requires a factual basis because permitting a legal basis would render "purpose" meaningless (NAACP Br. 38-39) or "basis" "'wholly superfluous.'" Common Cause Br. 43 (citation omitted). Despite their wish casting, nothing in the statute's text evidences that the "basis" of a Section 303 demand must be a factual basis. Rather, definitions of the

terms "basis" and "purpose" demonstrate that the purpose of a Section 303 request is its reason, end, or intent, while its basis is its justificatory principle. *See Webster's New World Dictionary of the American Language* 122, 1182 (8th coll. ed. 1960) (defining "purpose" as the "intention; aim" or "object for which something . . . is done; end in view," and "basis" as the "chief supporting factor" and "the basic principle or theory"). Under these definitions, it is clear that permitting a legal basis does not render "purpose" meaningless.

Legal usage elsewhere bears this out. *See Taylor v. Freeland & Kronz*, 503 U.S. 638, 641 (1992) (holding that there was "no statutory basis" for a debtor's attempt to shield lawsuit proceeds from creditors (citation omitted)); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 389 (2024) (describing its review of National Labor Relation Board conduct as limited to assessing whether its determination had a "reasonable *basis in law*" (emphasis added; citation omitted)). Indeed, this Court frequently weighs in on whether a prison sentence is "based on" specific *legal* authority, *i.e.*, the Sentencing Guidelines. *See, e.g.*, *United States v. Davis*, 99 F.4th 647, 655 (4th Cir. 2024) (noting that a "defendant who has been sentenced to a term of imprisonment based on a sentencing

range that has subsequently been lowered by the Sentencing Commission . . . may sometimes provide a basis for compassionate release" (internal citations omitted)).

3. Even if, as defendants contend, Section 303 requires a factual basis, the DOJ's demand stated an adequate basis. First, contrary to Common Cause's assertion (Common Cause Br. 45), the United States has not waived any argument as to whether the July 15 letter provided a factual basis for its written demand. The district court did not reach defendants' arguments that the basis for Section 303 must be a factual basis. JA6, 13. Common Cause ignores the DOJ's assertion before the district court that its demand complied with Title III, including the basis and purpose requirement. JA44. Having "properly presented" its Title III claim, the DOJ "can make any argument in support of that claim[.]" *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534 (1992). After all, "parties are not limited to the precise arguments they made below[,]" nor are they "limited to the manner in which the question was framed below." *Id.* at 534-535. This Court is still "obliged on appeal to consider any theory plainly encompassed by the submissions in the underlying litigation." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581,

604 (4th Cir. 2004).[5] That the demand contained a sufficient factual basis, assuming Title III requires one, is an argument plainly encompassed in the DOJ's Title III claim.

Second, if Section 303 requires a factual basis, then then there is no requirement that the demand ever invoke the CRA, and the July letter was a demand in itself, making clear both the factual support for the demand and that the purpose was NVRA enforcement. JA52-53. The July letter points out various Election Assistance Commission's Election Administration and Voting Survey (EAVS) anomalies identified from Virginia's EAVS responses, which alerted the Attorney General that Virginia might not be complying with HAVA and NVRA. JA53; *see* U.S. Br. 48-49. Commissioner Koski errs in discrediting the letter's articulated anomalies because the DOJ did not use the word "basis." Koski Br. 47; *Hannah P. v. Coats*, 916 F.3d 327, 345 (4th Cir. 2019) ("Proper notice does not require 'any magic words.'" (citation omitted)).

---

[5] For similar reasons, NAACP's assertion that the United States has "forfeited" its argument that the "August 14 letter stated a 'legal basis' for its demand" "because DOJ did not make it below" is wrong. NAACP Br. 38. In fact, Common Cause recognizes that "DOJ argued below that the provision of a *legal* basis for the demand (*i.e.*, citing the CRA) was enough." Common Cause Br. 45 (emphasis in original).

Common Cause errs in discrediting the DOJ's letter because it perceives the cited anomalies as "somewhat different than other states" and "to be expected between the states, and even within states." Common Cause Br. 47-48. The United States is unfamiliar with the "somewhat different" exception to the Attorney General's investigative authority. But it is sure the American people can take solace in knowing that, although the Attorney General cannot investigate them, election irregularities are "to be expected." Common Cause cannot be serious.

### D. The DOJ's stated purpose of ascertaining Virginia's compliance with the NVRA and HAVA was sufficient.

Defendants assert that the DOJ's Title III demand was inadequate because the DOJ's purpose of ascertaining Virginia's compliance with the NVRA and HAVA does not relate to the purposes underlying Title III. Koski Br. 49-52; NAACP Br. 40-43; Common Cause Br. 50-51. Yet, there is no such limitation on the scope of the purpose for the demand anywhere in the text of Title III. *See* U.S. Br. 51-54.

"[N]othing" in the statutory text "limits the purposes for which the DOJ may request the records" under Title III. *Benson III*, 187 F.4th at 467 (Murphy, J., concurring). When Congress wants to limit permissible investigative purposes, it knows how. *See* U.S. Br. 52-53. "[W]here

Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Dean v. United States*, 556 U.S. 568, 573 (2009) (alteration in original; citation omitted). Under Title III, it is sufficient that the Attorney General is "investigating possible violations of a Federal statute." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam) (quoting 106 Cong. Rec. 7767 (1960)) (statement of Sen. Keating).

Even assuming Section 303 imposes some implicit outer limit on permissible purposes, this demand falls comfortably within it: federal agencies generally may investigate "merely on suspicion" of noncompliance, or "just because" they want assurance of compliance. *United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950). Further, both the NVRA and HAVA were enacted to protect voting rights. *See* U.S. Br. 53-54.[6]

[6] The DNC asserts that "[b]ecause the NVRA and HAVA do not create affirmative obligations to remove registrants other than movers and the deceased, DOJ's search for *all* ineligible voters overreaches both the stated purpose in its Title III demand and DOJ's own authority." DNC Br. 20 (emphasis in original). The DNC ignores that HAVA mandates that States may not "accept[] or process[]" an application for

NAACP's contention that the United States' invocation of voting rights is "a last-ditch pivot" raised for the first time on appeal is incorrect. NAACP Br. 42. At its core, NVRA is rooted in the belief that "the right of citizens of the United States to vote is a fundamental right." 52 U.S.C. 20501(a)(1). HAVA protects that right by ensuring that voter registrations and votes are accurately tracked. Therefore, NAACP is feigning ignorance. It is obvious that when the United States seeks to enforce two statutes concerning the right to vote, the United States' purpose for doing so is to protect that statutorily protected right.

### E. Mere allegations of purported improper purposes do not eliminate the United States' entitlement to records under Section 303.

Defendants assert that DOJ's purpose is pretextual and urge the Court to "affirm on the alternative ground that the federal government's purported purpose is contrived." Koski Br. 53 (citing *Department of Com.*

voter registration "unless the application includes" particular identifiers. 52 U.S.C. 21083(a)(5)(A)(i)-(ii). Therefore, "to the extent the voter list reflects information about registered voters who lack underlying registration records, those people shouldn't be on the voter list in the first place." *Benson III*, 187 F.4th at 479 (Griffin, J., dissenting).

*v. New York*, 588 U.S. 752, 784-85 (2019)); *see* Common Cause Br. 54-56; DNC Br. 3-4. Defendants' arguments are meritless.

1. To begin, defendants rely upon *Department of Commerce v. New York* to assert that this Court should reject the DOJ's allegedly pretextual purpose for its written demand. Defendants ignore that the Supreme Court stated that "a court may not reject an agency's stated reasons for acting simply because the agency might also have had other unstated reasons." *New York*, 588 U.S. at 781 (citation omitted).

2. Defendants also make accusations that the United States' stated purpose is pretextual—that DOJ's true aim is to assemble a national voter database, target voters for removal, or advance immigration enforcement. That contention "go[es] to the truth of the DOJ's allegations and cannot be addressed on a motion to dismiss." *Benson I*, 819 F. Supp. 3d at 767. In any event, defendants' evidence of pretext consists of public statements by federal officials and Executive Orders concerning voter-list initiatives generally, all of which are consistent with the demand's stated purpose of assessing Virginia's compliance with the NVRA and HAVA. Koski Br. 54-55; Common Cause Br. 54-56. Consistent conduct is not evidence of pretext.

Further, much of defendants' pretext narrative rests not on the Complaint or the demand letters but on newspaper articles, an anonymous former employee's account, and filings from unrelated litigation in other jurisdictions. *See* Common Cause Br. 9-11, 54-55; *see also* Koski Br. 10; Lawyers' Comm. Br. 9-19. Such material is either irrelevant (such as filings in the unrelated litigation) or not properly before this Court on review of a Rule 12(b)(6) dismissal, which tests the sufficiency of the operative pleading.[7]

Defendants' outside-the-pleadings hearsay does not satisfy the "heavy burden" of showing bad faith. *High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1183 (10th Cir. 2019) (citation omitted). This Court should disregard it.

[7] Lawyers' Committee asserts that the United States' must meet a heightened burden because "[t]he Administration's government-wide push to accelerate AI adoption." Lawyers' Comm. Br. 30-31. What law does the Lawyers' Committee cite to support its claim? A Supreme Court case barring prohibitions on anonymous pamphleteering. Lawyers' Comm. Br. 35 (citing *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 357 (1995)). The relevance of this case is beyond us.

## II. Neither state nor federal privacy laws give this Court any grounds to affirm the district court's judgment.

### A. Federal law preempts any contrary Virginia privacy law.

Commissioner Koski and NAACP assert that Virginia privacy law is not preempted by federal law because state and federal law can coexist. Koski Br. 59-61; NAACP Br. 43-45. Why? Because they doubt that the unredacted information would assist the DOJ's investigation. Koski Br. 61. Although the DOJ appreciates their insight into the matter, the DOJ has explained that such information would assist the DOJ in verifying the accuracy of Virginia's SVRL. *See* JA133-134 ("last four of SSN or driver's license" protects voters because it ensures the wrong "John Smith" is not being removed from the voter registration list).

Defendants also err in their reading of *Lynd II*. As discussed, *Lynd II* did not describe the outer boundary of Title III's coverage. *Kennedy v. Lynd*, 306 F.2d 222, 230-231 (5th Cir. 1962) (*Lynd II*). Instead, the court was explaining why the delay in permitting inspection was unwarranted given the nature of the records at issue. *Ibid.* Therefore, contrary to defendants' wishes (Koski Br. 60-61; NAACP Br. 45; Common Cause Br.

57-58), *Lynd II* does not support their argument that Title III does not preempt Virginia law.

### B. The United States is complying with federal privacy laws.

1. The United States was not required to plead or prove its compliance with the Privacy Act or the E-Government Act. Koski Br. 62-63. Nothing in Title III suggests that it must, nor do those Acts place an affirmative burden on the United States to do so. Not only was this argument not required to be raised in the United States' opening brief, but it was also encapsulated in the United States' argument that privacy laws do not excuse Virginia from complying with Title III. *See* U.S. Br. 57-58.

2. Defendants argue that DOJ failed to comply with the Privacy Act because the DOJ's existing System of Records Notice (SORN) is insufficient. NAACP Br. 47-50; Common Cause Br. 60-61. That is incorrect.

Regarding the DOJ's applicable SORN (*see* U.S. Br. 61-64), NAACP and Common Cause object that the SORN's coverage of "[s]ubjects of investigations" and "victims" cannot describe ordinary registered voters. NAACP Br. 48; Common Cause Br. 60-61. But a "subject" is simply a

person about whom an agency gathers information in connection with an investigation, in contrast to a "target," who is a person against whom the agency has substantial evidence of a violation. *American Oversight v. United States Dep't of Justice*, 45 F.4th 579, 582 n.2 (2d Cir. 2022). And no defendant explains why an eligible voter is not a potential "victim" of NVRA or HAVA non-compliance when that voter's vote may be diluted by an inaccurate roll. Because votes cast by eligible voters may be diluted by those cast by ineligible voters, *see Brnovich v. Democratic Nat'l Comm.*, 594 U.S. 647, 672 (2021), eligible voters are potential "victims" of NVRA and HAVA non-compliance, 68 Fed. Reg. 47,611 (Aug. 11, 2003). The related objection that the SORN does not adequately disclose DOJ's intended use of the data (NAACP Br. 47-48) demands more specificity than the Act requires; it obligates the agency to disclose "each routine use of the records" and "the purpose of such use," 5 U.S.C. 552a(e)(4), and the published SORN does so.

Lastly, NAACP asserts that the SORN covers only "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws" and therefore does not encompass the SVRL. NAACP Br. 48 (quoting 68 Fed. Reg. at 47,611). This language is

not limited to "run-of-the-mill files," *ibid.*, but extends to all "matters" relating to the enforcement of civil-rights laws.

## III. If this Court reverses, it should instruct the district court to order immediate production of the SVRL.

This Court should reverse the district court's Order dismissing the United States' Title III claim and denying the United States' Motion to Compel and remand with instructions to order Commissioner Koski to produce the requested unredacted SVRL immediately. Contrary to NAACP's assertion (NAACP Br. 50), there is no need to remand for discovery regarding whether other Title III requirements were satisfied. As the United States explained in its Opening Brief (at 38-39, 64-65), defendants may not challenge the factual accuracy of the basis and purpose for the DOJ's demand.

## CONCLUSION

This Court should reverse and remand with an order requiring Commissioner Koski to produce the current unredacted SVRL to the Department of Justice.

Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

ERIC A. SELL
Deputy Assistant Attorney General

s/ Andrew G. Braniff
ANDREW G. BRANIFF
KELSEY E. MCGEE
BENJAMIN E. SACHRISON
Attorneys
Department of Justice
Civil Rights Division
Appellate Section
Ben Franklin Station
P.O. Box 14403
Washington, D.C. 20044-4403
(202) 251-0053

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because the brief contains 6365 words, excluding the parts exempted by Federal Rules of Appellate Procedure 32(f). This brief also complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5)-(6) because it was prepared in Century Schoolbook 14-point font using Microsoft Word for Microsoft 365.

s/ Andrew G. Braniff
ANDREW G. BRANIFF
Attorney

Date: October 29, 2026